IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| GLENDA J. PASSMORE, | ) | CASE NO. 3:20-CV-01370 |
| | ) | |
| Plaintiff, | ) | JUDGE JEFFREY J. HELMICK |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Defendant. | ) | |

**Introduction**

Before me by referral[1] is an action by Glenda J. Passmore under 42 U.S.C. § 405 seeking judicial review of the 2019 decision of the Commissioner of Social Security that denied Passmore s 2017 application for disability insurance benefits and supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the

[1] The matter was referred to me under Local Rule 72.2 by United States District Judge Jeffrey J. Helmick in a non-document order entered on June 23, 2020.
[2] ECF No. 1.
[3] ECF No. 12.

administrative proceedings.[4] Pursuant to my initial[5] and procedural[6] orders the parties have briefed their positions[7] and filed supplemental charts and fact sheets.[8] The parties have met and conferred with the goal of clarifying and/or reducing the matters at issue[9] and have participated in a telephonic oral argument.[10]

For the following reasons, I will recommend that the decision of the Commissioner be found to be not supported by substantial evidence, and that the matter be remanded.

**The ALJ's Decision**

As background, the ALJ found that Passmore was 49 years old as of the alleged disability onset date of September 2016.[11] She had a relationship with a boyfriend during the relevant period, cared for her daughter, and was able to perform personal care and household tasks.[12] Moreover, considering the evidence as a whole, the ALJ found that Passmore had normal memory, behavior, concentration and cognition" within the relevant period.[13]

The ALJ determined that Passmore had the following severe impairments:

---

[4] ECF No. 13.
[5] ECF No. 6.
[6] ECF No. 14.
[7] ECF Nos. 15 (Passmore), 18 (Commissioner), 19 (Passmore reply).
[8] ECF Nos. 15, Attachments (Passmore), 18, Attachment (Commissioner).
[9] ECF No. 20.
[10] ECF No. 22.
[11] Tr. at 28.
[12] *Id*. at 25.
[13] *Id*.

> Post-traumatic stress disorder (PTSD); anxiety; migraine headaches; degenerative disc disease of the cervical and lumbar spine; osteoarthritis of the knees; plantar fasciitis; carpal tunnel syndrome (CTS), status post right carpal tunnel release; and obesity with history of gastric bypass surgery (20 C.F.R. 404.1520(c) and 416.920(c)).[14]

That said, the ALJ found that Passmore does not have an impairment or combination of impairments that meets or equals a listing.[15] To that point, the ALJ first addressed Listings 1.02A (ineffective ambulation), 1.02B (major joint dysfunction in both upper extremities), 1.04 (degenerative disc disease), and 11.14 (disorganization of motor function in two extremities due to peripheral neuropathy).[16] Next, the ALJ considered Listings 12.04, 12.06 and 12.15, with emphasis on the so-called paragraph B" criteria of these listings.[17] In that regard, the ALJ found only a mild limitation in the area of understanding, remembering and applying information, and only a moderate limitation in the areas of interacting with others; concentrating, persisting and maintaining pace; and adapting or managing oneself.[18]

After consideration of the entire record, that ALJ found that Passmore has the residual functional capacity to perform light work with the following specific limitations:

> The claimant can stand/walk a total of four hours in an eight-hour workday and requires the ability to alternate positions between sitting and standing once every 30 minutes; can perform no overhead reaching with the upper right extremity; can perform frequent handling and fingering with the upper right extremity; occasional climbing of ramps or stairs; can perform no climbing of ladders, ropes

[14] *Id*. at 18.
[15] *Id*.
[16] *Id*. at 19.
[17] *Id*.
[18] *Id*. at 19-20.

> or scaffolds; can perform frequent balancing, stooping and crouching; can perform no kneeling or crawling; can have no exposure to dangerous machinery or unprotected heights; is capable of understanding, remembering and carrying out simple tasks; can tolerate occasional interaction with coworkers, supervisors and the public, but should not have the responsibility for conflict resolution or persuading others; and is limited to a work routine that is repetitive from day to day with few and expected changes.[19]

In making this RFC finding, the ALJ reviewed clinical evidence that showed Passmore has arthritis;[20] underwent arthroscopic surgery on her left knee;[21] and received treatment from a podiatrist and a chiropractor.[22] In connection with that treatment, she received medial branch blocks for back pain and radiofrequency ablation of the cervical spine.[23] Further, the ALJ noted that Passmore was obese and used a cane, although the use of a cane or other ambulatory device was never prescribed.[24] Moreover, the ALJ found no record of any medical provider suggesting that Passmore elevate her leg or use a recliner to control pain and swelling.[25]

The ALJ then reviewed treatment notes from the period September 2016 to June 2018 and concluded that they show that Passmore often had normal gait, strength, musculoskeletal motion, and sensation with negative straight leg raise testing and the

---

[19] *Id*. at 21.
[20] *Id*. at 22.
[21] *Id*.
[22] *Id*.
[23] *Id*.
[24] *Id*.
[25] *Id*.

ability to stand without difficulty."[26] Later physical examinations from 2019 showed, as to Passmore s CTS, that there were no significant, ongoing complications from CTS subsequent to Passmore s CTS release at the end of January 2019.[27] In addition, the ALJ first noted that Passmore is treating her migraine headaches with Topamax and has not required more aggressive therapies.[28]

As to Passmore s mental limitations, the ALJ observed that she has been treated with medication for PTSD, anxiety, and depression.[29] Further, the ALJ noted that Passmore was hospitalized in 2018 after threatening to harm her daughter and herself.[30] But the ALJ stated that Passmore s condition improved with group therapy and that she did not need any further urgent or emergency care for mental health issues after that 2018 hospitalization.[31] This record, the ALJ observed, is consistent with Passmore s own statements that describe her mental health symptoms as mild" and fairly stable" during the day.[32]

---

[26] *Id*. at 23.
[27] *Id*. at 24.
[28] *Id*.
[29] *Id*.
[30] *Id*.
[31] *Id*.
[32] *Id*.

In sum, the ALJ concluded that the clinical evidence as to mental deficits shows, that Passmore was alert, oriented, cooperative, attentive, and well-groomed with normal memory, behavior, concentration, and cognition," such that she could take care of her personal needs, care for her daughter and maintain a relationship with a boyfriend.[33]

As to the opinion evidence, the ALJ found the December 2017 mental functional opinion of state agency consultant Paul Tangermanm, Ph. D.,[34] and January 2018 mental functional opinion of state agency consultant Bonnie Katz, Ph.D.,[35] to be persuasive.[36] In addition, the ALJ also found the December 2017 physical functional opinion of Dr. Bruce Mirvis, M.D.,[37] and the January 2018 physical functional opinion of Dr. Steve E. McKee, M.D.,[38] to be persuasive.[39]

But the ALJ found that a February 2018 functional capacity evaluation from David Reed, a physical therapist,[40] as that was incorporated on the same date into a functional capacity evaluation from Courtney Baller, CNP,[41] was only somewhat persuasive.[42] To the extent that the ALJ found this evaluation unpersuasive, the ALJ noted that: (1) the

---

[33] *Id*. at 25.
[34] *Id.* at 86-88.
[35] *Id*. at 134-36.
[36] *Id*. at 26.
[37] *Id*. at 84-86.
[38] *Id*. at 130-34.
[39] *Id*. at 26.
[40] *Id*. at 1571-72.
[41] *Id*. at 1573-75.
[42] *Id*. at 26-27.

evaluation provided limited details" on how Passmore performed on the various tests that were used; (2) the portions dealing with repetitive tasks, reaching and hand limitations were not supported by clinical findings of normal grip strength and normal extremity motion; and, (3) outside of the sitting, kneeling, and crawling limitations, the limitations given in the Reed/Baller opinion are not fully consistent with the evidence showing normal gait, the ability to stand without difficulty, normal lumbar spine motion, normal musculoskeletal motion, normal strength and normal joint stability.[43]

Moreover, as to Baller s opinion in particular, the ALJ noted that the mental health findings were unpersuasive since they were: (1) in a checkbox format without explanation; (2) not supported by Baller/Reed s own examination findings that showed an unremarkable" mental health status; and (3) inconsistent with he record as a whole, which, as detailed above, showed mild" or fairly stable" mental health symptoms.[44]

The ALJ then found that Passmore could not perform her past work under the terms of the RFC.[45] Using the testimony of a vocational expert, the ALJ determined that Passmore could perform the requirements of three jobs that exist in sufficient numbers in the national

---

[43] *Id*. at 27.
[44] *Id*.
[45] *Id*. at 28.

economy: (1) assembler of plastic hospital products; (2) weld inspector; and (3) inspector of hospital products.[46]

As such, Passmore was found to be not disabled.[47]

**Issue for Judicial Review**

Passmore raises a single issue for judicial review:

> The ALJ failed to properly evaluate the opinions provided by the examining source, Mr. Reed, a physical therapist who conducted a functional capacity evaluation and provided specific functional limitations.[48]

**Analysis**

Passmore maintains that the ALJ s reasoning in finding the Reed/Baller opinion only somewhat persuasive was, in the first instance, confusing" because, she contends, the same clinical evidence used by the ALJ to discredit parts of the Reed/Baller opinion were also cited as supporting other parts of that same opinion.[49] Next, Passmore essentially contends that the ALJ cherry-picked" the evidence and so presented an inaccurate representation of the record [as a whole] and is misleading."[50]

---

[46] *Id*. at 29.
[47] *Id*.
[48] ECF No. 15 at 2.
[49] *Id*. at 10.
[50] *Id*. at 13.

For his part, the Commissioner asserts that the ALJ cited sufficient evidence to meet the substantial evidence standard.[51] Next, the Commissioner argues that what appears to be confusion" in the ALJ s reasoning is simply articulating how some portions of the Reed/Baller opinion were supported by the evidence, while other portions were not.[52] In the end, the Commissioner maintains, all of Passmore s arguments boil down to an assertion that evidence in the record could have supported a different conclusion than the ALJ set forth."[53] In such a situation the Commissioner contends, so long as substantial evidence supports the position reached by the ALJ, that decision will must be affirmed.[54]

Both parties agree that this matter is to be considered under the well-established substantial evidence standard.[55] Accordingly, that standard need not be re-stated here.

Although not argued by either party, the functional opinions of the state agency consultants were given prior to the functional opinion of Reed/Baller. Further the ALJ makes no reference to that fact in his analysis wherein he finds the early opinions more persuasive than the latter one, despite the fact that the earlier opinions were given without having seen the latter one or the evidentiary foundation for that latter opinion.

[51] ECF No. 18 at 7.
[52] *Id*. at 8.
[53] *Id*.
[54] *Id*.
[55] ECF Nos. 15 at 7 (Passmore); 18 at 2 (Commissioner).

Under the former rubric involving weight-giving it was permissible to give greater weight to an earlier opinion of a non-examining source over the later opinion of a treating or examining source. But doing so required the ALJ to give some indication on the record that he was aware of the fact that the earlier opinion was based on a less than complete record yet still warranted greater weight.[56] Where no such explanation was present in the record, the matter was to be remanded.[57]

Moreover, the lack of an explanation for why an earlier opinion based on a less than complete record is to be preferred over a later opinion is compounded when, as here, the ALJ erroneously claims that the earlier opinion is entitled to greater weight because, in part, it is based on a review of the record.[58]

Finally, as remains true even now under the current standard of assigning weight, the ALJ must explain his reasoning in sufficient detail to allow the [reviewing] court to trace the path of his reasoning."[59]

Here, because there is no indication that the ALJ considered the fact that the earlier state agency opinion, which was deemed more persuasive, did not review the later opinion that was deemed less persuasive, and because there was no reason given why such an earlier opinion that had not reviewed the whole record should be deemed more persuasive, I

---

[56] *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009).
[57] *Id*. at 409-10.
[58] See, tr. at 26.
[59] *Stacey v. Comm'r of Soc. Sec.*, 451 Fed. App'x 517, 519 (6th Cir. 2009) (citation omitted).

recommend finding that the ALJ s conclusion cannot here be meaningfully reviewed. Thus, I further recommend that the ALJ s decision be reversed as not supported by substantial evidence.

## Conclusion

For the reasons stated above, I recommend that the decision of the Commissioner denying disability benefits and supplemental security income to Glenda J. Passmore be reversed and the matter remanded for further proceedings consistent with this report and recommendation.

IT IS SO RECOMMENDED.

Dated: July 27, 2021

s/William H. Baughman Jr.
United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court s order.[60]

[60] *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh g denied*, 474 U.S. 1111 (1986).